UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, District Judge

REALPAGE, INC.,                     )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )   No. C 25-03004-JSC
                                    )
CITY OF BERKELEY, et al.,           )
                                    )
            Defendants.             )
_____)

                              San Francisco, California
                              Monday, April 7, 2025

   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
            RECORDING 2:00 - 2:16 = 16 MINUTES

APPEARANCES:

For Plaintiff:
                         Gibson, Dunn & Crutcher, LLP
                         One Embarcadero Center
                         Suite 2600
                         San Francisco, California
                            94111
                    BY:  KRISTIN A. LINSLEY, ESQ.

                         Gibson, Dunn & Crutcher, LLP
                         333 South Grand Avenue
                         Los Angeles, California 90017
                    BY:  BRADLEY J. HAMBURGER, ESQ.

For Defendants:
                         Keker Van Nest & Peters, LLP
                         633 Battery Street
                         San Francisco, California
                            94111
                    BY:  IAN A. KANIG, ESQ.


            (APPEARANCES CONTINUED ON NEXT PAGE)


*Echo Reporting, Inc.*

2

For Defendants:                    City of Berkeley
                                   Office of the City Attorney
                                   2180 Milvia Street
                                   Floor 4
                                   Berkeley, California 94704
                          BY:  KATRINA L. EILAND, ESQ.
                                   STEPHEN A. HYLAS, ESQ.

Transcribed by:                    Echo Reporting, Inc.
                                   Contracted Court Reporter/
                                   Transcriber
                                   echoreporting@yahoo.com

3

Monday, April 7, 2025                                    2:00 p.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Calling civil action C253004, RealPage, Inc. versus City of Berkeley, et al.

Counsel, starting with Plaintiff, can you please state your appearance for the record?

MS. LINSLEY (via Zoom):  Yes, your Honor.  Kristin Linsley from Gibson, Dunn, and Crutcher for Plaintiff RealPage.  And with me is Bradley Hamburger from our Gibson Dunn Los Angeles office.

THE COURT:  All right.  Good afternoon, Ms. Linsley and Mr. Hamburger.

MR. KANIG (via Zoom):  Good afternoon, your Honor.  Ian Kanig from Keker Van Nest and Peters for Defendant City of Berkeley and its city manager.  I'm joined today by Katrina Eiland and Stephen Hylas from the Berkeley City Attorney's Office, and my colleagues Elliot Peters, Cara Meyer, and Kayla Crowell are in the waiting room watching along today.

THE COURT:  All right.  Good afternoon.

Okay.  Before we start, I did want to disclose -- it's not a disqualifying factor under the Code of Judicial Conduct, but my daughter summered at Keker in the summer of 2024, I guess, has an open offer, but she hasn't accepted,

4

and she will be clerking in the District of Massachusetts next year.  But, anyway, I did want to disclose that connection.

All right.  Thank you for -- everyone for being here. What I thought was -- because we got that TRO on Friday, always on a Friday -- is get everyone together -- and thank you, Mr. Kanig, for getting and the Berkeley City people for getting together -- and see if we can come up together with a briefing schedule on the TRO or preliminary injunction, if Berkeley would be willing to say, "Hey, we would rather just have this briefed a little bit more organized way, and we'll agree not to enforce in the meantime."  I don't -- I'm not saying I'm -- that's possible.  But, anyway, that's why I wanted to get us together, just to see if the parties can come up with a briefing schedule, as opposed to me imposing some arbitrary schedule.

So I don't know if you've had a chance to talk at all.

MS. LINSLEY:  We did a little bit, your Honor. And this is Kristin Linsley.  I can lead off as the Plaintiff.  And we did have a little bit of a chance to discuss scheduling.  We would ask that the Court set a hearing -- set a schedule that would allow a hearing this week.  And the reason is that the effective date, even if we get a ruling on April 11, which is this coming Friday, that's still only a week and a half away from the effective

5

date of the ordinance in which -- at which time the ordinance, by operation of law, goes into effect under the current status.  So we had -- the City's counsel had originally proposed to us that their TRO opposition be due this Thursday, two days from now, this Thursday -- I'm sorry, that their opposition would be due Wednesday, April 9, and that our opposition would be due April 11, with a hearing next week.  We propose that they keep that April 9 date, but that we accelerate our opposition, so that we would be -- I'm sorry, our reply, so that we would be filing the next day on April 10, such that we could have a hearing on April 11, this coming Friday.  So that's --

THE COURT:  I'm not available on the 11th, so cut that --

MS. LINSLEY:  Oh, okay.

THE COURT:  -- but I am available on the 14th --

MS. LINSLEY:  On Monday.

THE COURT:  -- and would certainly appreciate if you could file by the end of the day, the 10th.  That would be great.

MS. LINSLEY:  Yeah.  Yeah, I think that would work.  And then we could --

THE COURT:  And we could set it a little later in the day, so you -- I don't -- Ms. Linsley, are you in the LA office, or are you local --

MS. LINSLEY:  I'm in the San Francisco office.

THE COURT:  But I don't know if Mr. Hamburger is coming up, so he doesn't have to fly on Sunday, we could set it for, say, 10:30 on Monday, if that works for the Berkeley folks.

MR. KANIG:  Your Honor, that -- that's correct. We had discussed a Wednesday, April 9th deadline for our opposition and a Friday April 11th deadline.  We have no problem with Gibson moving their deadline up a day.

I would like to propose one alternative for the Court so the Court has a couple of options here.  The -- as Ms. Linsley mentioned, the ordinance cannot go into effect until April 24th, because we are now in what is known under the Berkeley Charter as a mandatory protest period of 30 days whereby a petition may be submitted to the City Council to protest the ordinance.  And to that effect, the City Council is scheduled to meet in closed session next Monday, April 14th, and in open session next Tuesday, April 15th, and we would like the opportunity to brief them on this lawsuit and give them the opportunity to consider whether a stay of enforcement, as the Court mentioned, would be appropriate before filing our opposition brief, because we think that our opposition brief would benefit from our ability to discuss with the City Council in the first instance.  So our alternative proposal, which would leave time before the

April 24th effective date, would make our opposition due on April 16th, which is next Wednesday, and their reply due on April 18th, and we could have a hearing, subject to the Court's availability, the following week.

THE COURT:  The 21st, because it goes -- so -- okay.  I hear you.  That's -- I did -- and so -- but I guess -- and I know you just came into the case, but the question is sort of --

Well, first, let me ask Ms. Linsley why -- as long as my decision is made before the 24th, because you would want time to move for a stay or something.

MS. LINSLEY:  Right.  That's -- well, that's part of the problem, your Honor.  The significant problem we have is that, currently, the ordinance is going to -- into effect by operation of law on April 24 unless the City Council does something different between now and then.  So that date won't change unless the ordinance is either amended or repealed.  Something would have to happen.

THE COURT:  Or you get a court order.

MS. LINSLEY:  Correct, right, yeah.

THE COURT:  Yeah, yeah.

MS. LINSLEY:  And that's the problem is that if we wait -- if we push the schedule right up against that effective date, the company would -- and assuming your Honor rules in favor of the City and the ordinance goes forward,

8

the company -- RealPage would have no ability to adapt its operations to comply with the ordinance in that short period of time.  There's a number of things the company would have to do operationally, especially given the very broad and ambiguous way that the ordinance is written.  There's quite a bit of work that would need to be done internally and externally with RealPage's customers to comply with the ordinance.  That's why we are wanting to get a ruling as soon as possible --

THE COURT:  Yeah.

MS. LINSLEY:  -- on legality of the ordinance as written.

THE COURT:  Yeah.

MS. LINSLEY:  And if there's something else that happens -- obviously, if the City does decide to amend or repeal the ordinance, and depending on what that looks like, then this case could become moot, or we may amend our complaint, and we may have a different timeframe.  But right now, we have this timeframe, and the City can do whatever it wants legislatively, but we need to move forward with our legal challenge or we will run out of time.

THE COURT:  And, Mr. Kanig, I assume until you meet with the City Council, just given Brown Act laws on the such, there's no way that you can agree to any -- for a stay of enforcement, although, of course, it's, it would seem,

9

highly unlikely to occur as soon as it comes into place, especially given -- it's obvious that changes would have to be done, but you can't do that without meeting, which I understand.  So --

MR. KANIG:  That's exactly correct.  That's exactly --

THE COURT:  Yeah.

MR. KANIG:  -- correct, your Honor.

I mean, we would appreciate some additional time beyond what Ms. Linsley was proposing.  I don't know if there is any, you know, middle ground that we could agree to that would still give them sufficient time to move for a stay, if that's what they intended to do.  Is there another schedule --

THE COURT:  Well, could you file -- could we just put off the hearing?  So you file everything, but we -- and the meeting on the 15th is not -- I could do a meeting on the 16th.  It would have to be by Zoom, but I could do it. And the 15th, I assume the public meeting is at -- in the evening?

MR. KANIG:  Your Honor, actually, I'm not entirely sure.  Maybe one of my --

THE COURT:  Yes.

MR. KANIG:  -- colleagues here could respond on that front, but --

10

Katrina, do you know if it's an evening meeting?

MS. EILAND (via Zoom):  I believe so.

THE COURT:  Yeah, but -- so, I mean, we could do that, but hearing what Ms. Linsley says -- and I understand. I mean, and you can't even tell me what you would recommend. So I understand that, too.

As a practical, commonsense matter, I'll just say it seems like Berkeley should give them, assuming I deny their motion, time to comply, right?  They don't want to hurt their customers.  That's certainly not in their interest. That's not in the City's interest, nor their customers' interest, but I understand that you can't make that representation until you meet with them.  So what if we were to do -- keep with our briefing schedule, we do our hearing on the 16th, but like at 11:00 a.m. by Zoom.  I prefer to do it in person, but I'm actually out in the East Bay speaking to my former high school students at my high school actually.  And in the event the City Council does something on the 15th, would it be -- maybe Mr. Hylas or Ms. Eiland knows, would it be on the agenda?  Like, will we be able to see -- will RealPage be able to see the agenda on the 15th? So if in closed session, the City Council were to recommend, "Hey, let's let this play out a little bit and stay enforcement," would that be on the agenda earlier in the day?

11

MR. HYLAS (via Zoom):  (Zoom glitch) the Brown Act usually requires -- I believe it's 72 hours notice.  But for a special meeting, it's only 24 hours notice.  And so I believe that the closed session would be on about 4:00 o'clock p.m. on the 14th.  And so if Council said, "Yeah, let's go ahead and put it on the agenda for tomorrow," we could notice it at 5:00 o'clock for a special meeting the following evening.

THE COURT:  Okay.  So it wouldn't be earlier in the day.  Okay.

MR. HYLAS:  Yeah.

THE COURT:  All right.  Okay.  Oh, no, it would go -- no, you're saying it would -- you would put it on the agenda, because it needs 24-hour notice, the evening of the 14th.

MR. HYLAS:  Correct.  And then it would be considered at the public meeting the following evening.

THE COURT:  All right.

Ms. Linsley, what if we then did the hearing at 11:00 a.m. by Zoom on the 16th, if needed --

MS. LINSLEY:  Well --

THE COURT:  -- but we can keep the briefing schedule the same.

MS. LINSLEY:  I hate to repeat myself, but the difficulty is that that gives the company barely a week to

12

comply if there's (indiscernible).

THE COURT:  Well, I have not -- right, I haven't seen anything.  I have no idea.  But I would -- but is -- like, I could probably order -- even if I denied it, I could probably do a temporary, I would think, order that says, you know, they can't enforce it on the 24 -- I mean, they just wouldn't do that.  Like I said, that makes no sense to hurt RealPage's clients in that way, but I don't know.

Mr. Kanig, what do you --

MR. KANIG:  Your Honor, I'm obviously fine with the schedule that I had previously agreed to with Plaintiff's counsel for a Wednesday and now a modified Thursday filing deadline for the April 9th and April 10th deadlines on the briefing.  April 16th is good for us at 11:00 a.m.  We don't think that -- you know, that this needs to happen this week, or rather on Monday.  I don't think that two extra days is going to really make that much of a difference for their stay motion.  I really don't see the need for that, and I think that the Court would probably appreciate an extra couple of days to look at our papers, because we intend to defend this --

THE COURT:  Well, I also don't want to rule something that's sort of moot, right, or is advisory, in a sense.

MR. KANIG:  Totally.

13

THE COURT:  So let's do the hearing at 11:00 a.m., and Ms. Linsley, Berkeley people have heard you and your very real concerns regarding imposing this, starting to enforce when it goes into law.  And so we'll do briefs, 9th, 10th, hearing the 16th at 11:00 a.m. unless Berkeley advises everyone that the Berkeley City Council, after public hearing, has agreed to stay its enforcement for a certain amount of time to let it play out, whatever that time is.

And then as soon as you're aware of that, Mr. Kanig, please get with Ms. Linsley, and maybe you can even do a stip on next steps.

MR. KANIG:  Your Honor, that makes a lot of sense, and we can definitely do that for you.  And we --

THE COURT:  Just --

MR. KANIG:  -- look forward to submitting --

THE COURT:  -- yeah.

MR. KANIG:  -- our opposition brief.

MS. LINSLEY:  And then --

THE COURT:  For your planning purposes, if I can just tell you, in May -- because I'm gone a bit -- I'm here the week of May 19th, and I'm also here May 27th, and I guess May 1st, but otherwise unavailable.

MS. LINSLEY:  Okay.  That's helpful, your Honor. And one other tweak, if I could be so bold, with the schedule, if we're going to have the hearing on the 16th,

14

maybe we might go back to the original schedule --

THE COURT:  Of the 11th, of course, that's --

MS. LINSLEY:  Yeah.

THE COURT:  -- only fair.  But by 5:00 p.m. on the 11th.

MS. LINSLEY:  Okay.  Good enough.  Yeah.

THE COURT:  So no one is working overnight.

MS. LINSLEY:  Yeah.

THE COURT:  Let's get it by 5:00 p.m. on the 11th.

MS. LINSLEY:  Good enough.  That works.

THE COURT:  Would you like a 5:00 p.m. on the 9th as well?

MR. KANIG:  No, your Honor, I would like all of the time.

THE COURT:  Okay.  All right.  All right.

MS. LINSLEY:  Yeah.  And then I don't know if there needs to be a process for updating the Court in advance of the hearing on what, if anything, happened at the meeting.

THE COURT:  Mr. Kanig will just e-mail Ms. Means, my deputy clerk, a copy to you, just letting us know whether the hearing needs to go forward, just as soon as you know. That would be helpful.

MR. KANIG:  Yes, your Honor.  We can update the Court and Plaintiff's counsel as soon as we have any

15

additional information, if we have any.

THE COURT:  Great.

Okay.  Great.

MR. KANIG:  Thank you very much.

THE COURT:  All right.  Thank you, everyone.

MR. KANIG:  Have a nice day.

MS. LINSLEY:  Thank you.

(Proceedings adjourned at 2:16 p.m.)

16

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Tuesday, April 15, 2025

*Echo Reporting, Inc.*