Kristin A. Linsley (#154148)
  klinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center #2600
San Francisco, CA  94111-3715
Telephone:     415.393.8200
Facsimile:     415.393.8306

Jay P. Srinivasan (#181471)
  jsrinivasan@gibsondunn.com
Bradley J. Hamburger (#266916)
  bhamburger@gibsondunn.com
Samuel Eckman (#308923)
  seckman@gibsondunn.com
Alexander N. Harris (#278482)
  aharris@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA  90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520

Attorneys for Plaintiff REALPAGE, INC.

KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
SHARIF E. JACOB - # 257546
sjacob@keker.com
IAN KANIG - # 295623
ikanig@keker.com
CARA R. MEYER - # 348877
cmeyer@keker.com
KAYLA CROWELL - # 349061
kcrowell@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400

BERKELEY CITY ATTORNEY'S OFFICE
FARIMAH F. BROWN - # 201227
City Attorney
KATRINA L. EILAND - # 275701
Deputy City Attorney
keiland@berkeleyca.gov
STEPHEN A. HYLAS - # 319833
Deputy City Attorney
shylas@berkeleyca.gov
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone: (510) 981-6998

Attorneys for Defendants THE CITY OF BERKELEY, CALIFORNIA and PAUL BUDDGENHAGEN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REALPAGE, INC.,<br><br>                     Plaintiff,<br><br>     v.<br><br>THE CITY OF BERKELEY, CALIFORNIA, and PAUL BUDDENHAGEN, CITY MANAGER OF BERKELEY, CALIFORNIA, in his official capacity,<br><br>                     Defendants. | CASE NO. 3:25-cv-03004-JSC<br><br>**JOINT STATEMENT REGARDING SCHEDULE ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Jacqueline S. Corley<br>Trial Date: None Set<br>Date Action Filed: April 2, 2025 |

**JOINT STATEMENT RE. PRELIMINARY-INJUNCTION MOTION SCHEDULE**

Pursuant to this Court's order (Dkt. No. 45), Plaintiff RealPage, Inc. and Defendants the City of Berkeley and Paul Buddenhagen (together, the "Parties") submit the following scheduling proposals for briefing RealPage's motion for preliminary injunction and expedited discovery.

## I. PROPOSED SCHEDULES ON BRIEFING AND EXPEDITED DISCOVERY

| Deadline | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| **PI Discovery Opens** | May 5, 2025 (agreed) | May 5, 2025 (agreed) |
| **File PI Motion** | May 30, 2025 (agreed) | May 30, 2025 (agreed) |
| **File PI Opposition** | July 18, 2025 (agreed) | July 18, 2025 (agreed) |
| **File PI Reply** | August 8, 2025 | August 1, 2025 |
| **File PI Sur-Reply** | No Automatic Sur-Reply | August 15, 2025 |
| **PI Discovery Closes** | Date Final Brief Due | August 15, 2025 |
| **Hearing on PI Motion** | At this Court's Convenience | At this Court's convenience. |

RealPage requests that the hearing on its PI Motion include live witness testimony, with the parties submitting proposed findings of fact and conclusions of law after the hearing.

## II. POSITIONS ON DISPUTED ISSUES

### RealPage's Position

The Parties met and conferred and were able to agree on most elements of a proposed schedule for briefing and expedited discovery for RealPage's preliminary injunction motion, as set forth above. The Parties disagree on four issues: (1) what RealPage's reply deadline should be; (2) the City's contention that it should be allowed a sur-reply as a matter of right, to be included in the schedule now; (3) the City's contention that it should be exempt from any discovery; and (4) the City's contention that the Court should impose advance discovery-response deadlines without regard to the nature and scope of any party's request for discovery.

As set out more fully below, RealPage's positions on the four disputed issues are as follows: As to issue (1), RealPage should be allowed three weeks for its reply. The City has declined to rule out presenting expert witness testimony with its opposition, and RealPage will need time to depose any

1  such expert.  As to issue (2), there is no reason to depart from this Court's usual rules precluding sur-
2  replies except under specific circumstances.  If new material is included in RealPage's reply that war-
3  rants a sur-reply under those rules, the City can seek leave to file one at that time.  As to issue (3),
4  RealPage does not agree that the City is exempt from any discovery at this stage of the action.  The
5  City's only contentions to support such a blanket exemption are relevance and the deliberative process
6  privilege, but these arguments are necessarily context-specific, and should be addressed to RealPage's
7  discovery once it is propounded—under the Federal Rules, they are not reasons to bar discovery against
8  a party altogether.  Finally, as to issue (4), RealPage suggests that the parties propound discovery at
9  the agreed time and then meet and confer in good faith within one business day on an appropriate
10 expedited response deadline in light of the nature and scope of the discovery propounded.

**1. RealPage's Reply Deadline.**  The City demands that RealPage file its reply in two weeks, rather than the three weeks RealPage seeks.  RealPage advised the City that it would agree to two weeks if the City does not plan to present an expert, but that it would need three weeks if the City reserves the right to present an expert.  The City declined to commit not to having an expert, so RealPage will need three weeks for its reply because it will need to depose any expert or other declarant presented by the City.  It is solely to depose any declarants presented by the City that RealPage needs additional time for its reply, not to conduct and incorporate into its reply discovery on other issues, as the City incorrectly suggests.  RealPage notes that it already agreed to give the City longer for its opposition than RealPage is taking for its opening brief, and RealPage's proposed three-week window—for both conducting the deposition and drafting the reply—is already expedited.  The City has offered no meaningful response on this point.

**2. Sur-Reply.**  The City requests a sur-reply as a matter of right and regardless of the contents of RealPage's reply.  But courts "thoroughly disfavor requests to file sur-replies"—particularly where they are "merely an attempt to have the last word."  *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2018 WL 3198800, at *1 (S.D. Cal. June 26, 2018).  Given that courts routinely reject requests to file a sur-reply *after* a reply is filed, the City's request here—before briefing even begins—is doubly inappropriate.  The Local Rules do not allow sur-replies absent court approval, L.R. 7-3(d), which is generally not given absent new matters raised in the reply brief.  If RealPage does raise new arguments

in its reply, the City can seek to file a sur-reply at that time, and it also may file an objection to any "new evidence" submitted in the reply. *Id.* The City offers no reason why it should be given advance permission to file a sur-reply before the contents of the reply are even known.

Should the Court nonetheless agree to give the City's advance authorization for a sur-reply, there is no basis for the City's request that it have three weeks to file it. As noted above, the only reason RealPage needs three weeks for its reply is so it can depose the City's expert and any other declarants that it offers. There will be no such need in connection with any sur-reply. Accordingly, if the Court allows a sur-reply, which it should not, the City should have two weeks to file it.

**3. Mutuality of Discovery.** The City also demands that discovery should be one-sided, such that the City can take discovery of RealPage, but RealPage cannot take any discovery of the City. That proposal—"discovery for me, but not for thee"—is contrary to the Federal Rules. No party in a civil action is categorically immune from discovery, including government entities. On the contrary, courts regularly allow challengers pressing First Amendment claims to seek discovery from government actors involved in the alleged unconstitutional conduct. More generally, the "deliberative-process" privilege is not a categorical bar in any event. The City's proposal is flawed for several reasons.

As an initial matter, RealPage has a right under the Federal Rules to seek discovery from the City to support its claims. Rule 26 expressly provides that parties are entitled to discovery from other parties, and if the other parties need relief from discovery for some specific reason, the proper procedure is to seek a protective order. *See* Fed. R. Civ. P. 26(b)-(c). There is no rule that any party—including a municipality such as the City—is categorically exempt from any discovery in an action.

The City first argues that *no* topic of discovery against the City could possibly be relevant to RealPage's claims, but that is demonstrably incorrect.[1] Multiple aspects of RealPage's constitutional challenge—including its antitrust sub-context—support discovery against the City. At a minimum, it is clear that the parties dispute whether RealPage's software violates the federal or state antitrust laws.

---

[1] The City seems to think that RealPage and the Court must simply accept the City's version of the facts and that RealPage should not be allowed to contest them via discovery. For example, the City simply asserts that "the ordinance is sufficiently tailored to its undisputedly compelling interests in addressing housing affordability in Berkeley." Statement at 10. But it is not undisputed that the ordinance is tailored at all or even directed at the right target. RealPage should not have to accept City's version of these or any other facts.

RealPage is entitled to discovery to understand the City's position on issues relevant to that issue, such as the definition of the relevant market for rental properties, the degree to which rent control ordinances supersede any effect RealPage's software could have, the facts available to the City about that market and rental prices, and similar issues.[2] RealPage also is entitled to discovery to support its constitutional claims, particularly given that the City has made clear that it concedes none of the issues raised by those claims—including the nature of the governmental interest supporting the ordinance, whether other means were available to tailor the ordinance to that government interest, whether RealPage was a target of the ordinance such that it has standing to pursue this action, and similar issues. And RealPage is certainly entitled to discovery relating to materials and other information, including materials submitted by proponents of the ordinance, that were considered by the City but not made part of the public record. RealPage is entitled under Rule 26(b) to pursue discovery to develop these issues, just as the City will be doing.

In its position set out below, the City misstates RealPage's position on discovery, suggesting that RealPage wants to take discovery "on two primary topics: (1) Berkeley's legislative motives in enacting and enforcing the ordinance, including its City Council's attorney-client communications with the City Attorney's Office and its private deliberations; and (2) constituent communications with Berkeley about the ordinance." It then provides a wildly exaggerated account of what discovery against the City might entail. But the City's description of what discovery by RealPage would entail is both incomplete and incorrect. RealPage has never suggested that it wanted to inquire about either "legislative motives" or "attorney-client communications," nor did it suggest general discovery about

---

[2] The City argues that, "No market definition or market power is needed to prove antitrust liability under federal or state law." Statement at 14–15. But this is wrong as a matter with respect to antitrust claims judged under the Rule of Reason. Even the version of RealPage software that used non-public data in runtime was deemed to be a Real of Reason case-not a *per se* one. *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 519–20 (M.D. Tenn. 2023) (holding alleged conspiracy involving RealPage was "not the straightforward form of horizontal price-fixing conspiracy for which courts apply the *per se* standard"). The lawsuit filed by the DOJ also does not assert that the use of RealPage software (including the use of non public data) is a *per se* violation. And, under a Rule of Reason case, market definition and market power are elements that the City must establish. *Id*. at 521.

conversations with Berkeley residents or depositions of City Attorneys.[3] But the specific nature of potential discovery requests—to which the City may interpose objections—is irrelevant at this juncture. The possibility that a litigant might propound impermissible discovery requests does not justify a categorical bar on that litigant's right under the Federal Rules to seek such discovery. Rather, if the City believes any discovery RealPage propounds is improper, its recourse would be to make appropriate objections at that time and, if necessary, seek a protective order.

The City's only other response is that any discovery against it would be barred by the deliberative-process privilege, but that also is incorrect. By its nature, the deliberative-process privilege is qualified and context-specific—it does not provide that government entities are *per se* immune from discovery. *See, e.g.*, *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009) (permitting discovery from agency, despite invocation of deliberative-process privilege); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1026 (E.D. Cal. 2010) (same). Courts have repeatedly made clear that the deliberative process privilege is a qualified protection, assessed via a multi-factor balancing test that considers, among other things, the nature of the information sought, the specific need for discovery, the government interests involved, whether the materials are truly "deliberative" in character and whether they are "pre-decisional." *See, e.g.*, *Thomas*, 715 F. Supp. 2d at 1020 (deliberative-process privilege is "a qualified privilege," such that "a litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure" (citing *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161–62 (9th Cir. 1984))); *accord Warner*, 742 F.2d at 1161–62 (describing multiple factors to be considered in deciding deliberative-process privilege claim and finding two specific agency documents privileged).

The privilege provides no basis for a categorical discovery bar. *See, e.g.*, *California Psychiatric Transitions*, 258 F.R.D. at 391 (agency required to provide deposition witness "to clarify ambiguities

---

[3] The City's characterization of *City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984) as holding that "objective indicators" of legislative intent that can be considered in a constitutional challenge are limited to matters in the public record is incorrect. The Court imposed no such limitation. And the issue decided in Foley was very limited—whether legislators can be deposed "solely to determine their subjective motives for enacting ordinances challenged as violative of the First Amendment." *Id.* at 1296. Nothing in Foley suggests that municipalities are entirely immune from discovery in any First Amendment or other constitutional challenge.

related to the factual aspects" of the investigative file, despite EEOC's assertion of deliberative-process privilege); *Thomas*, 715 F. Supp. 2d at 1026 (deliberative-process privilege did not preclude interrogatory seeking Governor's criteria for parole review and the method for evaluating such criteria). Each privilege assertion requires individualized resolution, not a blanket immunity. *See, e.g., Llera v. Las Vegas Metro. Police Dep't*, 564 F. Supp. 3d 914, 919 (D. Nev. 2021) (city police department could assert deliberative-process privilege in § 1983 action only as to pages of administrative incident report that included "facts and deliberative material that [were] interwoven," not pages that contained only facts); *accord Moni Law v. City of Berkeley*, No. 15-CV-05343-JSC, 2016 WL 7212296, at *2 (N.D. Cal. Dec. 13, 2016) (deliberative-process privilege applied to documents within "Berkeley Police Department's Post-Incident Review" because they were "compiled as part of the Department's investigation" into the events at issue in the litigation and "contain[ed] 32 separate policy recommendations" presumably made in response to those events).

Finally, the City strangely argues that it is entitled to expedited discovery against RealPage—seemingly without regard to the timing of any Rule 26(f) conference—but that RealPage would have to show "good cause" for any discovery against the City that would occur prior to such a conference. This argument, made for the first time on the eve of this filing, literally makes no sense. Obviously, if the Court is going to direct expedited discovery, it is up to the Court whether to require a Rule 26(f) conference before such discovery occurs, but either way the same standard would have to apply to both parties. There is no world in which the City would get "automatic" expedited discovery against RealPage, but RealPage would have to show "good cause" to seek expedited discovery against the City.

For these reasons, it would be inappropriate and premature to impose a categorical bar on any effort by RealPage to propound discovery on the City. Rather, the proper procedure would be for the parties to propound their respective discovery requests—which RealPage certainly would do with any deliberative-process considerations in mind—and then for the City to raise any objections to RealPage's specific discovery requests in an meet-and-confer and, if necessary, in a motion for protective order under Rule 26(c). To allow discovery only for one party would be grossly unfair and unprecedented. Indeed, RealPage is unaware of any case where the court barred discovery entirely against one

Gibson, Dunn & Crutcher LLP

6

party, including in an antitrust or First Amendment dispute—and the City cites none, despite RealPage's request for such authority during the parties' discussions.

**4. Discovery Deadlines.** RealPage has consistently proposed expedited discovery to allow the parties prompt access to the information they need for their briefing. The City agrees with RealPage's proposal to expedite discovery. But the City also unnecessarily asks that this Court preemptively impose arbitrary deadlines for RealPage to respond to any discovery of any scope that the City serves—while, again, contending that the City not have to respond to any discovery. In particular, the City proposes that RealPage would have 5 days to respond to any written discovery propounded by the City; that RealPage "must furnish a witness within 7 days of a deposition notice;" and that RealPage would have 10 days to produce documents in response to any RFPs propounded by the City, no matter how extensive those RFPs might be.

RealPage's position is that the parties should expedite discovery but that these artificial, uniform deadlines do not make sense without first knowing the scope and nature of the specific requests. It may well be possible for RealPage to produce responsive documents within 10 days of certain requests, but RealPage cannot know in advance that it can do so in all cases, regardless of how extensive the City's requests may be. And a rules that dictates in advance that RealPage must produce documents, no matter how voluminous, within 10 days of a request will incentivize overbroad and unduly burdensome requests. Similar issues are raised by a requirement that RealPage produce and prepare a witness for deposition, no matter the witness's schedule or the nature of the deposition notice, within one week of a notice. Such deadlines are not necessary or productive here, just as they have not been necessary in other cases involving expedited discovery, and the City provides no reason to impose them here. And, notably, when RealPage asked during the parties' meet and confer whether the City would agree to be bound by its own discovery deadlines should the Court order discovery to be bilateral, the City *refused to make that commitment*—confirming that such deadlines should not be imposed in advance of seeing the requests to which they will apply.

Gibson, Dunn & Crutcher LLP

To be clear, and contrary to the City's contention in its narrative below—RealPage is ***not*** contending that the default deadlines provided for in the Federal Rules should apply. On the contrary, RealPage has consistently advocated for expedited proceedings, including expedited discovery, so it can vindicate its constitutional rights promptly. Toward that end, RealPage proposes that, rather than adopting up-front discovery deadlines untethered from actual discovery requests, the parties agree in advance that they will serve their respective discovery requests and then meet and confer in good faith within one business day of such service to discuss a schedule for responses, with any disputes to be submitted to the Court. That approach will preserve expedition (moving discovery much faster than the ordinary rules require) while allowing the parties to cooperate to ensure a reasonable and expedited schedule for responses, taking into account the scope of any requests.

### Defendants' Position

**1. Berkeley's Sur-Reply.** The Parties have agreed on the deadline to open discovery for the purposes of RealPage's motion for a preliminary injunction, the briefing dates through the opposition, and that such discovery should close when briefing on the motion closes. However, RealPage disputes the need for a sur-reply. Berkeley submits that this Court should grant it leave to file a sur-reply in support of its opposition to RealPage's preliminary-injunction motion because this motion presents issues of "sufficient importance" to authorize such additional briefing and, to that end, Berkeley needs the opportunity to respond to any reply evidence that RealPage introduces. *See, e.g.*, *LifeScan, Inc. v. Shasta Techs., LLC*, No. 12-CV-06360-JST, 2013 WL 12201564, at *10 (N.D. Cal. May 21, 2013) (granting the defendant leave to file a sur-reply in preliminary-injunction briefing).

Moreover, RealPage has informed Berkeley that RealPage intends to take discovery after the opposition and before its reply and use that discovery in support of its reply. District courts commonly grant leave to file a sur-reply when new facts are introduced in reply. *See, e.g.*, *Banga v. Experian Info. Sols., Inc.*, No. C 09-04867 SBA, 2013 WL 5539690, at *3 (N.D. Cal. Sept. 30, 2013) ("If a party raises a new argument or presents new evidence in a reply brief, a court may consider these matters only if the adverse party is given an opportunity to respond."). Given that RealPage has made it clear that it intends to introduce new evidence in reply, its argument that Berkeley should wait to find out what their reply contains is properly rejected from the outset.

**2. RealPage's Reply.** At the same time, RealPage seeks an enlargement of its time to file a reply by two weeks. *See* Civ. L.R.7-3(c) ("The reply to an opposition must be filed and served not more than 7 days after the opposition was due."). Berkeley did not reject RealPage's request for additional time out of hand, as it claims here. Instead, during the meet and confer, Berkeley informed RealPage that it would not oppose a three-week deadline to file the reply in exchange for agreement to a three-week deadline to file the sur-reply. RealPage refused, but that offer still stands. Accordingly, in the event that this Court chooses to order a reply and sur-reply with mirror three-week deadlines, the reply would be due on August 8, 2025, and the sur-reply would be due on August 29, 2025.

**3. Expedited Discovery Deadlines.** Berkeley's agreements to the proposed motion-briefing schedule are contingent upon its proposal to expedite preliminary-injunction discovery, which RealPage resists. For any discovery that this Court permits in connection with RealPage's motion, Berkeley proposes that: (1) a responding party has 5 calendar days to respond to written discovery; (2) a party receiving a deposition notice furnish a witness within 7 calendar days (subject to reasonable and good faith exceptions for scheduling conflicts); and (3) a party producing documents in response to requests for production has 10 days to produce documents. The Parties' proposed schedules are entirely unworkable if RealPage has 30 days to serve objections, only to serve substantive responses and produce documents at some indefinite time thereafter. *See, e.g.*, Fed. R. Civ. Proc. 33(b)(2) (30 days default response); Fed. R. Civ. P. 34(b)(2)(A). Absent shortened deadlines, it is impossible for Berkeley to oppose RealPage's motion barring a much-elongated briefing schedule.

RealPage's proposal to negotiate the deadlines to respond to written discovery, produce witnesses, and produce documents on an *ad hoc* basis after every instance of discovery is served is unworkable on this expedited timeframe. Most acutely, if the parties cannot reach agreement on an appropriate deadline, RealPage would require the Parties to submit a joint discovery letter to resolve that dispute in advance of receiving any response. That framework creates a potential bottleneck on every instance of discovery that could quickly overwhelm the briefing schedule and burden the Parties and this Court with resolving additional threshold discovery disputes. Setting specific deadlines now avoids that deeply inefficient framework and ensures that Berkeley is not prejudiced in defending its ordinance on an expedited timeline. *See Najafi v. Pompeo*, No. 19-cv-05782-KAW, 2019 WL

5423467, at *2 (N.D. Cal. Oct. 23, 2019) (ordering truncated deadline to respond to discovery where the plaintiff sought preliminary injunction). Berkeley will of course accommodate reasonable exceptions to these default deadlines based on specific needs.

**4. No Good Cause for Discovery on Berkeley.** There is no need for discovery from Berkeley to resolve RealPage's forthcoming motion for a preliminary injunction. This case concerns the constitutionality of Berkeley's ordinance prohibiting the sale and use of algorithmic software that facilitates unlawful price coordination among Berkeley landlords in setting residential rental prices and occupancy rates. The plain text of the ordinance makes clear, on its face, that it does not target any speech that is subject to any level of First Amendment scrutiny. Even if it were, the ordinance is sufficiently tailored to its undisputedly compelling interests in addressing housing affordability in Berkeley. To the extent that this Court wishes to go beyond the plain text of the ordinance to litigate its constitutionality, the materials that RealPage needs are already in the public record or in its exclusive possession. RealPage's demand for discovery from Berkeley thus serves no purpose other than to create an irrelevant sideshow that distracts from the objective constitutional analysis that is required.

RealPage incorrectly suggests that it is entitled to "automatic" discovery, much less expedited discovery, prior to the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."). Such expedited discovery is only proper upon a showing of "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). RealPage bears the burden to establish good cause in light of the following factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Facebook, Inc. v. Various, Inc.*, No. C-11-01805-SBA DMR, 2011 WL 2437433, at *2 (N.D. Cal. June 17, 2011). RealPage has not even attempted to make this showing. *See id.* (denying discovery in preliminary-injunction proceedings where plaintiff failed to meet its burden of showing "good cause").

Instead, RealPage has offered a set of shifting reasons for discovery, none of which establish good cause. During the meet-and-confer process over this joint statement, RealPage proposed to take

discovery from Berkeley on two primary topics: (1) Berkeley's legislative motives in enacting and enforcing the ordinance, including its City Council's attorney-client communications with the City Attorney's Office and its private deliberations; and (2) constituent communications with Berkeley about the ordinance. This proposed discovery is categorically irrelevant to RealPage's constitutional claims under binding precedent. *See City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984) (holding that only "objective indicators" are relevant to the analysis of a First Amendment claim and any discovery into "legislative motives" is "wholly improper"). Further, the first category seeks information shielded from disclosure by the attorney-client and/or deliberate process privileges. Berkeley thus respectfully requests that this Court prohibit RealPage from taking this discovery.

> **A.    RealPage's proposed discovery on Berkeley is not—and cannot be— reasonably calculated to lead to the discovery of admissible evidence.**

RealPage's proposed discovery on Berkeley is categorically improper because it is not reasonably calculated to lead to the discovery of admissible evidence. RealPage's claim under the First Amendment is "determined by objective indicators as taken from the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment of the statute, the stated purpose, and the record of proceedings." *Foley*, 747 F.2d at 1298. These materials are public record and are already filed on the docket in this case. *See* Dkt. No. 30–6 (relevant excerpts of March 11, 2025 City Council meeting agenda), Dkt. No. 30–8 (relevant excerpts of March 25, 2025 City Council meeting agenda), Dkt. No. 30–9 (text of ordinance); *see also* Dkt. No. 1 at 35–76 (relevant transcription of March 11, 2025 City Council meeting).

It is well-established that a plaintiff's attempt to take discovery beyond the scope of these objective indicators is not permitted. "Allowing discovery of legislative motives . . . would not only create a major departure from the precedent rejecting the use of legislative motives, but is also inconsistent with basic analysis under the First Amendment which has not turned on the motives of the legislators, but on the effect of the regulation." *Foley*, 747 F.2d at 1298. For those reasons, facts "introduced solely to establish a supposed nefarious motive on behalf of the City Council . . . are wholly irrelevant . . . as our analysis of the constitutionality of an ordinance must proceed from the text of the ordinance, not the alleged motives behind it." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1146

n.7 (9th Cir. 2004); *see also United States Postal Serv. v. City of Berkeley*, No. C 16-04815 WHA, 2018 WL 2188853, at *5 (N.D. Cal. May 14, 2018) (refusing to consider evidence of legislative motives in evaluating constitutional challenge to ordinance). Accordingly, RealPage's first proposed category of discovery on Berkeley—into its legislative motives for enacting and enforcing the ordinance—is improper and should be prohibited.

RealPage's only other proffered discovery request—into the communications of residents with Berkeley about the proposed ordinance—is equally irrelevant to its claims. The views of constituents about the ordinance have no bearing on the objective indicators of constitutionality. *See Foley*, 747 F.2d at 1298; *see also Hill v. Colorado*, 530 U.S. 703, 724 (2000) ("[T]he contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support."). In any case, Berkeley's City Council could not have collectively communicated with third parties to decide whether to enact the ordinance because California's Brown Act prohibits it from engaging in such serial meetings. *See* Cal. Gov't Code § 54952.2(b)(1). Thus, all the communications between the Berkeley City Council and its constituents that are relevant to the Council's decision to ultimately enact the ordinance are necessarily contained in the public record of its public session meetings.

**B.    The Berkeley City Council's communications with the Berkeley City Attorney's Office and its private deliberations are plainly privileged.**

Beyond the fact that RealPage's requested discovery is irrelevant, discovery into the Berkeley City Council's legal communications and private deliberations about the ordinance is shielded from disclosure under the attorney-client privilege and the deliberative process privilege.

*First,* any discovery related to the communications between the Berkeley City Attorney and the Berkeley City Council regarding the ordinance is protected by attorney-client privilege. *See Miller v. City of Los Angeles*, 2015 WL 12781181, at *2 (C.D. Cal. May 15, 2015) ("The attorney-client privilege applies to communications between [city officials] and the City Attorney's Office in which [city officials] sought legal advice, or provided information to the City Attorney's Office to enable it to provide legal advice."); *see also* Cal. Gov. Code § 54956.9 (setting the scope of the attorney-client privilege in the context of city council closed sessions). Seeking discovery—or even a privilege log—

of these communications is improper and harassing. *See Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. 2009) ("[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log"). For those reasons, this Court should preemptively preclude discovery into these privileged materials.

**Second,** the private deliberations of the Berkeley City Council are also shielded by the deliberative process privilege. That privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." *Hongsermeier v. Comm'r*, 621 F.3d 890, 904 (9th Cir. 2010); *see also Moni L. v. City of Berkeley*, No. 15-CV-05343-JSC, 2016 WL 7212296, at *1 (N.D. Cal. Dec. 13, 2016) (applying the deliberative process privilege to a local government). This privilege covers precisely the materials that RealPage seeks here—those that are "predecisional," *i.e.* those generated before the enactment of the ordinance and the decision to suspend its enforcement pending this preliminary-injunction motion and "deliberative in nature, containing opinions, recommendations, or advice" about Berkeley policy. *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). RealPage's proposed discovery into the City Council's deliberations and communications with the City Attorney would undermine "the underlying purpose of the deliberative process privilege" to ensure governments "are not forced 'to operate in a fishbowl.'" *Carter v. U.S. Dep't of Com.*, 307 F.3d 1084, 1090 (9th Cir. 2002).

Nor can RealPage make the "strong showing" required to override Berkeley's interest in nondisclosure under the factors that courts consider in applying this qualified privilege: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The views of the Berkeley City Council are irrelevant to RealPage's constitutional claims (as discussed above), and RealPage is already in possession of the only documents relevant to its challenge: publicly-available meeting agendas, the ordinance's text, stated purpose, and findings, the record of proceedings, and materials about its software. Most fundamentally, allowing RealPage to conduct irrelevant

discovery into the private deliberations of the City Council would chill its ability to "freely [] explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Carter*, 307 F.3d at 1089.

RealPage's authorities only support a finding that the categories of documents it seeks—internal deliberations among City Council members—are the type of "communications designed to directly contribute to the formation of important public policy" whose disclosure "would chill the very candor that is necessary to formulate policies[.]" *Moni L.*, 2016 WL 7212296, at *2.

### C. RealPage's late-breaking proposal for antitrust discovery also fails.

Finally, when RealPage sent over its portion of this statement it for the first time stated its desire to propound discovery about Berkeley's position on its antitrust liability. In particular, RealPage contends that it will require discovery into "the definition of the relevant market for rental properties, the facts available to Berkeley about that market and rental prices, and similar issues." This misunderstands the nature of the inquiry on which this Court is about to embark.

Unless and until RealPage contends that its newly-introduced software falls within the scope of the ordinance, and further contends that the software does not give rise to antitrust liability, its demand for Berkeley's positions are entirely premature. Indeed, if RealPage contends that its software falls outside the scope of the ordinance, it lacks standing to proceed, and there is no need for the Court to reach any First Amendment questions at all. *See Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010). In the event that the Court does reach the First Amendment, it is RealPage's burden to show it has a colorable claim that the ordinance violates its First Amendment rights. *Smith v. Helzer*, 95 F.4th 1207, 1214 (9th Cir. 2024), *cert. denied sub nom. Smith v. Stillie*, 145 S. Ct. 567 (2024). That requires RealPage to set forth its theory of **non-liability** under the antitrust laws in the first instance; that is the tradeoff for bringing an affirmative pre-enforcement action instead of waiting to defend an enforcement action.

In any case, RealPage's request for the City's market definition and market power contentions are folly. No market definition or market power is needed to prove antitrust liability under federal or state law. *Duffy v. Yardi Sys., Inc.*, No. 2:23-CV-01391-RSL, 2024 WL 4980771, at *7 (W.D. Wash. Dec. 4, 2024) (holding that Section 1 of the Sherman Act does not require any such showing in a case

against one of RealPage's algorithmic price-fixing software competitors); *see also Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (California's UCL covers any "conduct that threatens an incipient violation of an antitrust law, or violates the spirit or policy of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition"). Obviously, in the event that RealPage presents expert testimony on antitrust issues, Berkeley reserves the right to respond. If Berkeley presents expert evidence about these or other antitrust issues, it will make that expert available for deposition.

Collectively, the expedited discovery RealPage proposes would be extremely burdensome. Its broad scope includes all communications between Berkeley's City Council and its City Attorney about the ordinance, necessitating an extensive privilege log. It also includes all constituent and other third party communications, which would open up the City to invasive discovery into electronic communications that are irrelevant to RealPage's constitutional claims. It requires the City to frontload any antitrust analysis, prophylactically spending sums on experts before even seeing the basis for RealPage's position. And it exposes the City to an untold number of improper depositions of City Attorneys about their advice, Council Members about their intent, not to mention the potential depositions of Berkeley residents to who knows what end. The overbroad scope of RealPage's proposed discovery, and the burden it would impose, make it impossible for RealPage to meet the good cause standard.

Thus, Berkeley respectfully requests that the Court open discovery at this time on RealPage's preliminary-injunction motion only as to RealPage and any relevant third parties.

|     |                |                                                       |
| --- | -------------- | ----------------------------------------------------- |
| 1   |                | Respectfully submitted,                               |
| 2   |                |                                                       |
| 3   | April 30, 2025 | By: /s/ Kristin A. Linsley                            |
|     |                |        Kristin A. Linsley                             |

Kristin A. Linsley (#154148)
 klinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center #2600
San Francisco, CA 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

Jay P. Srinivasan (#181471)
 jsrinivasan@gibsondunn.com
Bradley J. Hamburger (#266916)
 bhamburger@gibsondunn.com
Samuel Eckman (#308923)
 seckman@gibsondunn.com
Alexander N. Harris (#278482)
 aharris@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

*Attorneys for Plaintiff RealPage, Inc.*

| | | |
|---|---|---|
| Dated: April 30, 2025 | | KEKER, VAN NEST & PETERS LLP |
| | By: | /s/ Sharif E. Jacob<br>ELLIOT R. PETERS<br>SHARIF E. JACOB<br>IAN KANIG<br>CARA R. MEYER<br>KAYLA CROWELL |
| Dated: April 30, 2025 | | BERKELEY CITY ATTORNEY'S OFFICE |
| | By: | /s/ Farimah F. Brown<br>FARIMAH F. BROWN<br>City Attorney<br>KATRINA L. EILAND<br>Deputy City Attorney<br>STEPHEN A. HYLAS<br>Deputy City Attorney<br><br>Attorneys for Defendants THE CITY OF BERKELEY, CALIFORNIA and PAUL BUDDENHAGEN |

Gibson, Dunn & Crutcher LLP

17

# CIVIL L.R. 5-1(i)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I, Kristin A. Linsley, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

*/s/ Kristin A. Linsley*
Kristin A. Linsley